MARY JOHN FAMILY, L.L.C.

VERSUS

STEVENS CONSTRUCTION & DESIGN, LLC
AND ADAM STEVENS

NO. 24-CA-132

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 835-204, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING

October 30, 2024

**TIMOTHY S. MARCEL**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
John J. Molaison, Jr., and Timothy S. Marcel

**REVERSED IN PART; AFFIRMED IN PART**
    **TSM**
    **FHW**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUB RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
MARY JOHN FAMILY, L.L.C.
Albert J. Nicaud
Jeffrey M. Siemssen
Bret D. Guepet, Jr.
Ramsey T. Marcello

COUNSEL FOR DEFENDANT/APPELLEE,
STEVENS CONSTRUCTION & DESIGN, L.L.C. AND ADAM STEVENS
Charles K. Chauvin

**MARCEL, J.**

In this case arising from purportedly defective renovation of a gas service station, plaintiff Mary John Family, L.L.C., ("MJF") appeals a January 17, 2024 district court judgment granting a motion to confirm arbitration award filed by defendants Stevens Construction & Design, L.L.C. ("SC&D") and Adam Stevens and dismissing with prejudice the claims brought against them by MJF. For the following reasons, we reverse in part and affirm in part the judgment of the trial court.

## BACKGROUND

MJF is the owner of a Chevron gas station located at 3120 Clearview Pkwy., Metairie, Louisiana. On May 4, 2020, MJF contracted with SC&D for the renovation of the gas station. The parties utilized industry standard AIA contract forms for their agreement. Following the commencement of construction, billing disputes arose between the parties. MJF alleges that SC&D double-billed MJF and also failed to pay its subcontractors and suppliers. MJF also alleges SC&D caused project delays, failed to properly supervise the project, failed to obtain the necessary inspections and permits, and negligently allowed work to be done in a manner not in accordance to plans and specifications. MJF claims that it terminated its contract with SC&D "for cause" prior to the completion of the project and later hired a third party to complete the project. On November 18, 2022, MJF filed a petition for damages against SC&D and its owner, Adam Stevens, alleging breach of contract, negligence, and violations of the Louisiana Unfair Trade Practices Act.

In response to the petition, SC&D filed a dilatory exception of prematurity in which it argued that, on February 1, 2023, MJF engaged the initial claim resolution process pursuant to the terms of their construction contract. The contractual dispute resolution procedure provided for a first step of submitting

claims to an Initial Decision Maker before being mediated. In this case, the project architect was selected as the Initial Decision Maker. SC&D argued that because MJF's claims were still under review by the project architect at the time of the filing of the petition, MJF's action was premature. MJF opposed the dilatory exception, arguing that it was not bound by the terms of the construction contract requiring an initial review process, because the parties, by their oral statements and actions, had modified the written terms of the agreement.

The matter was set for hearing on April 11, 2023, at which time the trial court orally granted the exception of prematurity and ordered the parties to participate in the Initial Decision Maker's review process. The project architect issued his Initial Decision Maker report on April 20, 2023. On June 27, 2023, the trial court issued its written judgment granting the exception of prematurity and stayed the litigation on MJF's petition during the pendency of the Initial Decision Maker review process and any subsequent mediation invoked by the parties as provided for by the construction contract.

Days later, on June 30, 2023, MJF filed a motion to lift the stay of the proceedings. Its motion noted that the Initial Decision Maker report had been issued and SC&D, in response to MJF's written demand, had elected not to initiate mediation proceedings in accordance with the terms of the construction contract. Following a September 12, 2023 hearing, the trial court issued a judgment on September 26th denying the motion to lift the stay on the proceedings.

Prior to the hearing on the motion to lift the stay, on September 4, 2023, SC&D filed a "motion to confirm arbitration award" wherein it asked the court to confirm the initial decision of the project architect as final. SC&D's motion averred that MJF had waived its rights to pursue litigation in a court of competent jurisdiction because MJF failed to file for mediation. In particular, SC&D pointed to the provisions of the construction contract that require mediation as a condition

precedent for binding dispute resolution. SC&D attached copies of the construction contract and the initial decision maker's report in support of its motion.

Following a December 6, 2023 hearing on the matter, the trial court issued a judgment on January 17, 2024 in which it confirmed the initial decision of the architect as final and binding, dismissed with prejudice all claims brought by MJF arising from the contract, and ordered MJF to pay SC&D multiple sums (as stated in the initial decision) totaling $174,077.61.

On appeal, MJF raises multiple assignments of error: 1) the trial court erred in its interpretation of the terms of the construction contract; 2) the trial court erred in finding the appellant waived its right to litigate its claims; 3) the trial court erred in finding the decision of the Initial Decision Maker was an arbitration award; 4) the trial court erred in failing to compel the parties to mediation; 5) the district court erred in confirming an arbitration award despite SC&D's failure to introduce a valid arbitration agreement; 6) the trial court erred in dismissing all of the claims against SC&D and Adam Stevens. We address these assignments of error *en globo* in our discussion below, beginning with whether the trial court erred in granting the motion to confirm the arbitration award before proceeding to discussion of whether the trial court properly dismissed MJF's claims pursuant to waivers contained in the contract.[1]

---

[1] As part of its arguments relating to the alleged arbitration proceedings, though not as a specific assignment of error, MJF has claimed that the initial decision process violated MJF's due process rights. This claim was not argued before the trial court. In light of the longstanding rules that litigants must raise constitutional attacks in the trial court, not the appellate courts, and that the constitutional challenge must be specifically pleaded and the grounds for the claim particularized, we pretermit any discussion of MJF's due process claims. *FMT Shipyard & Repair, LLC v. Normand*, 18-292 (La. App. 5 Cir. 5/30/19), 274 So.3d 868, 871.

24-CA-132                                    3

DISCUSSION

*Motion to Confirm Arbitration*

Under Louisiana Binding Arbitration Law, a provision in any written contract to settle by arbitration a controversy arising out of the contract must be construed as valid, irrevocable, and enforceable. La. R.S. 9:4201. However, before a judgment may be entered on a motion to confirm an arbitration award, the court must first determine whether there is a valid agreement to arbitrate. *FIA Card Servs., N.A. v. Weaver*, 10-1372 (La. 3/15/11), 62 So.3d 709, 713. It is the burden of the party seeking to enforce a contract to show the contract exists. *Id*. at 719; La. C.C. art. 1831. Whether a valid agreement to arbitrate exists is decided by application of principals that govern the formation of contracts. *NCO Portfolio Mgmt. v. Gougisha*, 07-604 (La. App. 5 Cir. 04/29/08), 985 So.2d 731, 735.

In this case, the AIA documents provide the written expression of the parties' contractual agreement, and these are the documents offered by SC&D as evidence of the arbitration agreement. We examine these documents mindful of the principles of contract interpretation set forth in the Civil Code. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. The words of a contract must be given their generally prevailing meaning; words of art and technical terms must be given their technical meaning when the contract involves a technical matter. La. C.C. art. 2047. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.

The documents utilized by the parties to confect their agreement are construction industry standard contract forms, AIA Document A101 - 2017

(Standard Form Agreement between Owner and Contractor) and AIA Document A201 - 2007 (General Conditions of the Contract for Construction). Together, the terms of these documents set forth a three step process for the resolution of disputed claims arising from the construction agreement. First, the claim must be submitted to an Initial Decision Maker for review. In this case, the project architect was selected as the Initial Decision Maker. Following the initial decision, dissatisfied parties may file for mediation administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures. Should mediation fail to resolve the parties' dispute, the parties may then proceed to binding dispute resolution as specified in A101 § 6.2 Binding Dispute Resolution. That section states:

> § 6.2 Binding Dispute Resolution
> For any Claim subject to, but not resolved by, mediation pursuant to Article 15 of AIA Document A201-2017 [sic], the method of binding dispute resolution shall be as follows:
> (Check the appropriate box.)
>
> [  ]  Arbitration pursuant to Section 15.4 of AIA Document A201-2017 [sic]
> [ X ]  Litigation in a court of competent jurisdiction
> [  ]  Other (Specify)
>
> If the Owner and Contract do not select a method of binding dispute resolution, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.

The language of this section sets forth a clear choice between arbitration and litigation as the third and final step in the dispute resolution process.[2] Just as clearly, it is only by selecting and checking the box do the parties agree to the arbitration of their disputed claims rather than default to litigation. SC&D's argument that the parties had an agreement to arbitrate their dispute merely by

---

[2] Additionally, A201 §15.4.1 states, "(i)f the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement." Further, A201 §15.4.3 states, "(t)he foregoing agreement to arbitrate … shall be specifically enforceable under applicable law in any court having jurisdiction thereof."

submitting their claims to the project architect for an initial decision must fail in light of the language of the agreement. Arbitration is clearly defined and was just as clearly rejected by the parties. There is no valid agreement to arbitrate here, and therefore the trial court erred in granting SC&D's motion to confirm an arbitration award.

*Dismissal of MJF's Claims*

Next, we examine whether the trial court erred in dismissing MJF's claims against defendants. It has long been recognized that a court will look to the import of a pleading and not be bound by the title. Every pleading is to be construed so as to do substantial justice. La. C.C.P. at. 865. The caption of the pleading does not control. Rather, courts are obligated to look through the caption of a pleading in order to ascertain its substance. *Atchley v. Atchley*, 01-67 (La. App. 5 Cir. 5/30/01), 788 So.2d 690, 693, *writ denied*, 01-1915 (La. 2/8/02), 808 So.2d 349. *See also* La. C.C.P. art. 865. It is also well settled that the articles of the Code of Civil Procedure are to be construed liberally and to implement the substantive law and are not an end in themselves. La. C.C.P. art. 5051; *Atchley*, 788 So.2d at 693.

The question of MJF's right to litigate its disputed claims was argued and litigated before the trial court on the motion to lift the stay of proceedings and the motion to confirm the arbitration award. We believe such argument is best considered as a peremptory exception of no right of action which this Court may consider on its own motion. La. C.C.P. art. 927(B); *Khoobehi Properties, LLC v. Baronne Dev. No. 2, L.L.C.*, 16-506 (La. App. 5 Cir. 3/29/17), 216 So.3d 287, 296, *writ denied*, 17-0893 (La. 9/29/17), 227 So.3d 288. Determination of whether a plaintiff has a right of action is a question of law. *Aucoin-Hart Jewelers, Inc. v. Metairie Shopping Ctr., L.L.C.*, 18-36 (La. App. 5 Cir. 5/30/18), 249 So.3d 1011, 1015.

To determine MJF's rights to proceed with litigation, we turn our attention again to the language of the contract. As noted above, it is clear that the parties elected litigation in a court of competent jurisdiction as the final step in their contractual dispute resolution process. The question before us is whether a party may be allowed to entirely skip the second step of this process, mediation, in favor of litigation.

First, turning again to A101 §6.2, we note the language for selection of binding dispute resolution applies to "any Claim subject to, but not resolved by, mediation…". This indicates that litigation is to be pursued only after mediation, not before.

Next, A201 §15.2.5 states, "(t)he initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution." Again, this language indicates that the final binding dispute resolution, here litigation, is only to be engaged in following the initial decision and mediation.

Finally, A201 §15.2.6 and §15.2.6.1 state:

§15.2.6 Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.6.1.

§15.2.6.1 Either party may, after the date of an initial decision, demand in writing that the other party file for mediation within 60 days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation within the time required, **then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.**
(Emphasis supplied.)

SC&D argues that these terms create a condition precedent for litigation.[3]

MJF argues that these terms are ambiguous, and that ambiguity should be resolved

---

[3] The common law "condition precedent" is analogous to the civilian "suspensive condition." *States Masonry, Inc. v. J.A. Jones Const. Co.*, 507 So.2d 198, 204 fn 15 (La.1987) (citing *City of New Orleans v. Texas and Pacific Railway Co.*, 171 U.S. 312, 18 So.Ct. 875, 43 L.Ed. 178 (1898)).

in favor of maintaining the litigation.[4]  In particular, MJF argues that the language of §15.2.6.1 in which a party may demand in writing that the other party file for mediation is contradictory to the permissive language of §15.2.6 that allows that a party may file for mediation at any time.  MJF argues, in effect, that the language of §15.2.6.1 supersedes that of§15.2.6 in that, once the demand letter was sent, only SC&D could have filed for mediation.  We disagree with MJS's proposed interpretation of the contract and find no ambiguity in the language there.

The underlying logical presumption of the AIA contract is that the parties will proceed to mediation if one or both are dissatisfied with the initial decision of the project architect.  If neither party is dissatisfied, then the disputed claim is resolved and there is no need to engage in the process any further.  If either party is dissatisfied with the initial decision, then they may file for mediation.  §15.2.6.  The language of §15.2.6.1 allows for a party (presumably one satisfied with the initial decision) to demand that the other (presumably dissatisfied) party instigate the next step in the alternative dispute resolution process by filing for mediation within a specified time frame or otherwise relinquish all rights to pursue resolution of the claim.  In other words, the demand letter triggers a timeline for the advancement or termination of the entire dispute resolution process.  Such a provision encourages finality to the ADR process so that parties either agree to a resolution of their dispute or proceed to the next stage of resolving their dispute in a timely manner.

MJF's argument that §15.2.6.1 only allows for the receiver of the demand letter to file for mediation is illogical and unsupported by both the permissive language of that section and the language of §15.2.6.  The sending of the demand

---

[4] In its appellant brief, MJF claims that the interpretation of these sections is a matter of first impression, and that "(a)fter scouring case precedent in every date and federal court in America" counsel was "unable to locate one case that interpreted whether these sections are ambiguous."  Arguably, if true, this would seem to indicate that the many parties utilizing these well-litigated and well-tested contracts do not find the language to be ambiguous.  *See* 2 Bruner & O'Connor Construction Law § 5:26 ("Mediation as a prerequisite to further dispute resolution process").

letter is not a prerequisite for participation in mediation, as indicated by the use of the word "may": "(e)ither party may … demand in writing…" and "(e)ither party may file for mediation…". Such language indicates that parties have three choices following the initial decision: 1) do nothing and accept to initial decision as a final and binding resolution of their dispute; 2) file for mediation; or, 3) send a written demand to the other party demanding that they file for mediation, thus triggering a timeline for advancement or termination of the entire dispute resolution process. To interpret the contract, as MJF suggests, such that the party sending the demand letter relinquishes its right to file for mediation would have the absurd consequence of placing an unnecessary prohibition that would prevent a party that genuinely wants to participate in the mediation process from doing so if the receiving party decides against mediation.

The facts here are undisputed: following the April 20, 2023 initial decision of the project architect, instead of filing for mediation itself, MJF sent a letter to SC&D on April 26 demanding that SC&D file for mediation within 60 days of the initial decision. On the same day, SC&D informed MJF that it was electing not to file for mediation. At any time thereafter prior to the 60 day deadline, MJF could have initiated the mediation process. It elected not to do so. The language of §15.2.6.1 is very clear that if the 60 day timeline is triggered and neither party files for mediation, then both parties waive their right to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.

MJF argues that its actions in filing its petition and sending the demand letter to SC&D reflected a true intent that the parties agreed to resolve their disputes via litigation. We decline to consider such parole evidence in face of the clear and unambiguous language of the contract[5], though we do not disagree that parties intended litigation in a court of competent jurisdiction  as the final step in

---

[5] *See* La. C.C. art. 2046.

the dispute resolution process as indicated by their selection in A101 §6.2. The language of the contract is the best reflection of the parties' intent, and the contract *sub judice* shows that the parties agreed to resolve any disputes arising from the contract by engaging in a three step dispute resolution process. The contract makes no provision for skipping to the final step, here litigation in a court of competent jurisdiction. Instead, the contract indicates there is to be a progression from an initial decision to mediation to litigation. Mediation is a prerequisite to litigation, and MJF elected not to pursue mediation. In so doing, it waived its right to proceed with the litigation.

In light of the above, we find no error in the trial court's dismissal of MJF's petition, and, on an exception of no right of action, find that MJF contractually waived its right to litigate its claims against SC&D when it failed to file for and participate in mediation. We also find no error in the trial court's decision to dismiss the claims instead of forcing them to participate in mediation, as this is also consistent with the language of the contract.

Accordingly, we reverse that part of the trial court judgment granting SC&D's Motion to Confirm Arbitration Award. In all other respects, the judgment of the trial court is affirmed.

**REVERSED IN PART; AFFIRMED IN PART**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## <u>NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY</u>

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY <u>**OCTOBER 30, 2024**</u> TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 24-CA-132

## <u>E-NOTIFIED</u>
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
ALBERT J. NICAUD (APPELLANT)      JEFFREY M. SIEMSSEN (APPELLANT)      CHARLES K. CHAUVIN (APPELLEE)

## <u>MAILED</u>
BRET D. GUEPET, JR. (APPELLANT)
RAMSEY T. MARCELLO (APPELLANT)
ATTORNEYS AT LAW
3000 18TH STREET
METAIRIE, LA 70002